UNITED STATES of America,
Plaintiff–Appellant,

v.

**Jean Edward PACKWOOD,**
Defendant–Appellee.

No. 87–1305.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 18, 1988.

Decided June 9, 1988.

Sanford Svetcov, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellant.

Barry Portman, Federal Public Defender, San Francisco, Cal., for defendant-appellee.

Before SCHROEDER, FLETCHER and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

### OVERVIEW

The government appeals the district court's dismissal of the indictment against Packwood on the ground that a 1980 plea agreement barred prosecution. We affirm.

### FACTS

On July 23, 1979, United States Park Police found the body of Janette Pimentel

in the Golden Gate National Recreation Area. She had been shot to death. In an August 6, 1979 interview, both Donald Desbiens, Pimentel's boyfriend, and Packwood, Desbiens' roommate, denied knowledge of the murder.

In March 1980, Packwood was arrested in New York and confessed to three bank robberies in San Francisco in the summer of 1979, all committed with Desbiens. In interview statements Packwood described the bank robberies and Desbiens' relationship with Pimentel. Packwood claimed that Desbiens had talked about killing her and had asked Packwood to do it because Pimentel knew too much about the robberies. Packwood stated that he had refused Desbiens' request.

Packwood was indicted on the bank robbery charges. On June 5, 1980, he entered into a written plea agreement that provided he would plead guilty to one count of bank robbery and cooperate and testify in the investigation of the robberies and Pimentel's murder, in return for freedom from prosecution for the other robberies and the murder. The next day Packwood entered his guilty plea.

On June 19, 1980, FBI agents Hopkins and Mahoney interviewed Packwood. Each agent filed a Form 302 report of his interview. Hopkins' 302 reported that when asked about his activities on July 23, 1979, the day of Pimentel's murder, Packwood recited his movements beginning with waking up at 10 a.m. Before reciting Packwood's description of his movements on July 23, Mahoney's 302 reported that Packwood "provide[d] information concerning the murder of ... Pimentel."

Packwood was sentenced to six years imprisonment on the bank robbery charge.

In December 1980, a former cellmate of Packwood's told the FBI that Packwood had confided that he had murdered Pimentel in another male's presence. No prosecution followed this information.

Five years later, Desbiens, who was in prison in Canada, confessed to Canadian police and to FBI agent Hopkins that he and Packwood had conspired to murder Pimentel. Desbiens indicated that the murder took place very early on the morning of July 23, 1979. Desbiens was tried and convicted of murder. In October 1986, Packwood was indicted for the murder of Pimentel.

In June 1987, shortly before Packwood's trial, defense counsel discovered the plea agreement and moved to dismiss the indictment. The district court granted the motion holding that (1) the agreement did not provide that it would be void or could be invalid if Packwood breached, (2) Packwood's breach was not clearly established, (3) the breach alleged by the government was not material, and (4) even if there had been a material breach, the government failed to give Packwood the necessary notice and an opportunity to cure. The government filed a motion for reconsideration, requesting an evidentiary hearing to resolve an "apparent discrepancy" in the evidence. The district court denied the motion.

## DISCUSSION

1. Was it an abuse of discretion to deny the government's request for an evidentiary hearing?

■ This court reviews the denial of an evidentiary hearing for an abuse of discretion. *United States v. DiCesare*, 765 F.2d 890, 895 (9th Cir.), *amended*, 777 F.2d 543 (9th Cir.1985). The moving party's allegations must be "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *Cohen v. United States*, 378 F.2d 751, 761 (9th Cir.), *cert. denied*, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed. 2d 215 (1967). General or conclusory factual allegations are not enough to require a hearing, *id.* at 760, but where "sworn statements and exhibits present directly contradictory accounts" of events, a hearing is required. *DiCesare*, 765 F.2d at 895–96.

The government contends that an "evidentiary discrepancy" required an evidentiary hearing. While Agent Hopkins' 302 report indicated only that Packwood described his actions beginning at 10 a.m. on

July 23, 1979, the day of the murder, Hopkins' declaration, prepared seven years after the interview in support of the government's opposition to the motion to dismiss the indictment, stated that in the June 19, 1980 interview Hopkins told Packwood he wanted to "interview him about his specific knowledge of the murder of Pimentel" and that Packwood "denied any participation in and knowledge of the murder."

This court has held that an evidentiary hearing was necessary to resolve a factual dispute between the parties over what they reasonably understood when entering into a plea agreement. *United States v. Arnett*, 628 F.2d 1162, 1164–65 & n. 4 (9th Cir.1979). Hearings have been held to determine whether a defendant, as he claimed and the government denied, was illiterate and thus unable to understand that he signed an agreement requiring him to testify, *United States v. Carrillo*, 709 F.2d 35, 36 (9th Cir.1983), and to resolve conflicting accounts by the prosecution and the defense whether an agreement gave blanket immunity for all criminal charges. *United States v. Krasn*, 614 F.2d 1229, 1232–33 (9th Cir.1980). The inconsistency claimed here is not between the parties' versions of events, but within the statements of one government witness. Hopkins' 302 and his declaration do not seem directly contradictory. The vague statement that Packwood denied participation in the murder could mean that, when asked about his movements on July 23, 1979, the day of the murder, Packwood did not say anything about the murder in accounting truthfully about his activity from the time he awakened at 10 a.m. The government's motion for reconsideration did not provide any further detail, such as a supplementary declaration, about any specific question by Hopkins which was answered untruthfully by Packwood. Further, the defense initially requested an evidentiary hearing on its motion to dismiss the indictment, but the prosecution in its reply suggested that the court could decide the motion on the declaration and affidavits.

Under these circumstances, it was not an abuse of discretion not to hold an evidentiary hearing on the government's motion to reconsider.

2. Did the district court err in finding that Packwood did not breach the agreement and in dismissing the indictment?

Plea bargains are "contractual in nature and must be measured by contract law standards." *United States v. Sutton*, 794 F.2d 1415, 1423 (9th Cir.1986). Plea agreements implicate important due process rights, however, and so the process must be fair. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor ... such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). A court must determine breach, with an evidentiary hearing if there are disputed issues of fact, and as a matter of law if the pleadings show no factual disputes. *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir.), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981).

To decide whether a plea agreement has been breached, this court considers what the defendant reasonably understood when he pled guilty. *United States v. Quan*, 789 F.2d 711, 713 (9th Cir.1986). Disputed terms of the agreement should be decided by objective standards; this is a question of fact for the district court. *Id.* at 713–14. The government has the burden of proof to show that Packwood breached the agreement, *Calabrese*, 645 F.2d at 1390, by a preponderance of the evidence. *United States v. Verrusio*, 803 F.2d 885, 890–91 (7th Cir.1986).

The relevant portions of the 1980 plea agreement read as follows:

Mr. Packwood agrees to furnish full and complete cooperation to the Federal Grand Jury of the Northern District of California and to the United States Attorney's Office and its investigative agencies, including immediate, full, complete and truthful disclosure of all information relevant to the investigations [of the bank robberies and the Pimentel mur-

**1012**

der]. Should it be determined by the United States Attorney's Office that Mr. Packwood has wilfully given *materially incomplete or false testimony or false information,* he shall be subject to prosecution for any appropriate federal criminal violation, including but not limited to perjury, and false statements. Furthermore, should Mr. Packwood wilfully violate any part of this agreement, by giving *materially incomplete or false testimony or false information,* or by refusing to testify at any trial or trials or ancillary proceedings thereto, then Mr. Packwood can be prosecuted for each and every crime which he may have admitted to the Grand Jury or the United States Attorney's Office, and any information provided to the Grand Jury or United States Attorney's Office may be used in connection with such a prosecution.

(Emphasis added.)

The agreement provides that "materially incomplete or false testimony or false information" given by Packwood constitutes breach. Packwood was never called upon to testify, and he argues that because only "false information" would breach the agreement, simply failing to provide complete information, by (as the government claims) recounting his movements on July 23, 1979 beginning only *after* the time of the murder, is not proscribed by the agreement.

The government will be held to the literal terms of the agreement, *United States v. Read,* 778 F.2d 1437, 1441 (9th Cir.1985), *cert. denied,* — U.S. —, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986), and under the literal terms of Packwood's agreement, *information* that is merely incomplete and not actually false is not a breach. The evidence fails to indicate that Packwood gave false information. Packwood did not breach the agreement, and so the indictment was properly dismissed.

### CONCLUSION

The trial court did not abuse its discretion in denying the government's motion for an evidentiary hearing on its motion to reconsider. The evidence failed to indicate

that Packwood had given "false information" so as to breach the plea agreement. The judgment of the district court is AFFIRMED.