**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Lawrence ESCAMILLA, Defendant–Appellant.**

**No. 91–10080.**

United States Court of Appeals, Ninth Circuit.

Decided May 26, 1992.

Withdrawn Aug. 13, 1992.

Filed Sept. 15, 1992.

Howard Trapp, Agana, Guam; Robert K. Wrede and Eric C. Castro, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, Cal., for defendant-appellant.

Karon V. Johnson, Asst. U.S. Atty., Agana, Guam, for plaintiff-appellee.

Before: ALARCON, D.W. NELSON, and CANBY, Circuit Judges.

D.W. NELSON, Circuit Judge:

Appellant Lawrence Escamilla was indicted in December of 1989 on charges of conspiracy to distribute and import cocaine. Prior to the beginning of his trial, he entered into a plea agreement with the government that, in part, required him to confess fully to his role in the conspiracy, cooperate with law enforcement officers, and successfully complete a polygraph examination. After ten weeks had elapsed, and after Escamilla confessed, he took and failed a polygraph test. The government then revoked the plea agreement and took Escamilla to trial, where he was convicted largely on the basis of the statements he had made to law enforcement officers under the auspices of the plea. On appeal, Escamilla contends that the trial judge erred by admitting both his confession and some hearsay statements of a government witness and that he was denied effective assistance of counsel. Because we find that Escamilla's confession was improperly admitted at trial, we reverse Escamilla's conviction. Because we reverse on the grounds that his confession was inadmissible, we need not reach Escamilla's other contentions on appeal.

## BACKGROUND

Lawrence Escamilla was indicted on December 14, 1989, along with seven co-defendants, on charges of conspiracy to distribute cocaine, conspiracy to import cocaine, and importation of cocaine. Escamilla was scheduled to go to trial on Monday, March 5, 1990, but on the preceding Friday the government notified the court that the parties had reached a plea agreement. The plea required Escamilla to enter a plea of guilty on the charge of conspiracy to distribute 3.4 kilos of cocaine in return for the government's dropping the other two

charges. Other provisions of the agreement required Escamilla "to fully and truthfully cooperate with federal law enforcement agents concerning their investigation" of the conspiracy and to testify before any relevant grand juries or at any trials in the future. The plea agreement also contained a contingency clause that stated that Escamilla "agrees to submit to a polygraph examination by any qualified Federal polygraph examiner.... This agreement is expressly contingent upon successful completion of a polygraph examination."

Pursuant to the plea agreement, the parties scheduled Escamilla's initial "debriefing" by the Drug Enforcement Administration (DEA) for the afternoon of March 5, on the assumption that Escamilla's guilty plea would be formally received by the court that morning. The court then notified the parties that it would be unable to take the plea until Tuesday morning, but Escamilla's debriefing took place as scheduled. Escamilla's attorney, Jerry Hogan, declined to accompany Escamilla to the debriefing, saying that it would not be necessary.

On the morning of March 6, the court accepted Escamilla's guilty plea after engaging him in the colloquy required by Fed.R.Crim.P. 11 ("Rule 11").[1] The judge asked Escamilla if he understood the provisions of the paragraph in the plea agreement that contained the polygraph requirement, but he did not specifically mention the paragraph's contingency clause. Escamilla consistently responded that he both understood and agreed to the plea's provisions, and both Escamilla and his attorney signed the agreement.

On May 31, 1990, ten weeks after Escamilla initially confessed, the parties appeared before the court, where Assistant United States Attorney ("AUSA") Johnson informed the district judge that Escamilla had recently taken and failed a polygraph exam.[2] In light of this failure, AUSA Johnson stated that the government would be seeking to charge Escamilla with the bulk of the cocaine imported by the conspiracy and that she believed Escamilla would wish to withdraw his plea because of the government's decision. "Indeed," she stated, the government "would have no objection to him doing so, because we consider the plea agreement void because of a failure to pass the polygraph." Escamilla's attorney agreed to the government's motion to withdraw the plea and Escamilla was remanded for trial.

Prior to the start of the trial, the government filed a motion for an evidentiary hearing in order to be able to introduce at trial the statements that Escamilla had made to DEA agents on March 5. Following the submission of memoranda by both parties and the holding of an evidentiary hearing on August 9, 1990, the court granted the government's motion. Escamilla was then convicted following a jury trial on the original three counts of the indictment. He was sentenced to 151 months imprisonment, five years supervised release, and a $150 special assessment. This appeal followed.

## DISCUSSION

As a preliminary matter, we must decide if Escamilla has properly preserved his claims regarding the admissibility of his confession for review. "As a general proposition, a party must raise an objection initially to the trial court in order to preserve it for appeal." *United States v. Hayden*, 860 F.2d 1483, 1485 (9th Cir.1988). In his memorandum filed in opposition to

---

**1.** Rule 11(c) states, in relevant part, that before accepting a guilty plea, the court must address the defendant personally and in open court in order to determine that the defendant understands the nature of the charges against him, the minimum and maximum penalties that could be assessed, that he has a right to counsel and a right to plead not guilty, and that a guilty plea waives his right to a trial. Rule 11(d) instructs the court not to accept a guilty plea without determining that the plea is voluntary.

**2.** At no time during the hearing or on appeal has the government explained why Escamilla was considered to have failed the exam.

the government's motion to use Escamilla's confession at trial, Escamilla argued against its admission on the grounds that the plea agreement was null and void under contract law principles, and that the government was therefore not entitled to use the confession obtained pursuant to that agreement against him at trial. Escamilla therefore met this burden in this case.

■ Plea bargains are " 'contractual in nature and must be measured by contract law standards.' " *United States v. Packwood*, 848 F.2d 1009, 1011 (9th Cir. 1988) (quoting *United States v. Sutton*, 794 F.2d 1415, 1423 (9th Cir.1986)). The application of contract law to plea agreements is premised on "the notion that the negotiated guilty plea represents a bargained-for quid pro quo." *United States v. Partida–Parra*, 859 F.2d 629, 633 (9th Cir. 1988). Courts called upon to interpret plea agreements must determine "what the parties to the plea bargain reasonably understood to be the terms of the agreement." *Sutton*, 794 F.2d at 1423.[3]

In this case, the government and Escamilla do not dispute that the plea agreement required Escamilla to confess and to otherwise cooperate with the government. They also agree that the agreement required Escamilla to take and pass a polygraph exam, that Escamilla in fact failed that exam, and that the government was therefore entitled to revoke the plea agreement and proceed to trial. Indeed, Escamilla did not object to the revocation of the plea agreement in the district court. Where the parties disagree is over what use may be made of the confession Escamilla gave pursuant to the terms of the plea agreement. The plea agreement itself is silent on what use may be made of the confession if the agreement is revoked. The government introduced

Escamilla's confession against him at trial over his objection.

■ We think the district court erred in admitting Escamilla's confession under these circumstances, for two reasons. First, the government petitioned the court to void the plea bargain so that it could restore the status quo ante and prosecute Escamilla as if the bargain had never been formed. By introducing the confession at trial, however, the government has retained the benefits it received under the agreement, while denying Escamilla his side of the bargain. The government, in other words, has been unjustly enriched. The only way to return the parties to the status quo ante is to bar the government from using Escamilla's confession against him at trial.

■ Second, the terms of the plea bargain itself simply do not contemplate the use of Escamilla's confession against him at trial. The government is "held to the literal terms of the agreement," *Packwood*, 848 F.2d at 1012 (citing *United States v. Read*, 778 F.2d 1437, 1441 (9th Cir.1985)), and there is no provision in the agreement authorizing any such use. The United States has written plea agreements in the past which clearly contemplate the use of the defendant's confession against him should the agreement be breached. For example, the agreement in *Packwood* provided that:

[S]hould Mr. Packwood wilfully violate any part of this agreement, by giving materially incomplete or false testimony or false information ... then Mr. Packwood can be prosecuted for each and every crime which he may have admitted to the Grand Jury or the United States Attorney's Office, *and any information provided to the Grand Jury or the United States Attorney's Office may be*

**3.** As we noted in *Partida–Parra*, the use of the contract analogy in plea bargain cases is valid only "within a limited range of fact patterns." 859 F.2d at 633. Specifically, *Partida–Parra* concluded that contract law was useful in interpreting plea agreements and in determining the remedy for their breach, but rejected the use of

contract principles in deciding whether a valid agreement was formed at all. *Id.* at 633, 634. We concluded that the *formation* of a plea agreement was governed instead by Fed. R.Crim.P. 11, which requires that the district court expressly approve a plea agreement.

*used in connection with such a prosecution.*

*Id.* (emphasis added). The government extracted no such agreement from Escamilla in this case. To the extent that the plea bargain mentions Escamilla's confession at all, it states that it will not be used against him. The plea agreement expressly provides that the government may not use Escamilla's confession against him in sentencing. The possibility that Escamilla may have interpreted this provision to mean that he was protected from any use of his confession against him further contributes to the fundamental unfairness of allowing the government to utilize Escamilla's confession at trial.[4]

In light of the absence of any evidence that the parties to the plea agreement contemplated the use of Escamilla's confession against him at trial and the fundamental unfairness of allowing the government to keep the benefit of its bargain while denying Escamilla his, we conclude that the district court erred in admitting Escamilla's confession at trial. Because we therefore reverse and remand this case for a new trial, we need not reach Escamilla's other contentions on appeal.

REVERSED AND REMANDED.

---

**4.** Finally, we note that interpreting the contract the way the government suggests would require us to conclude that Escamilla's Fifth Amendment privilege against self-incrimination may be conditioned on the results of a polygraph exam. This court has consistently questioned the accuracy and reliability of polygraph examinations. *See, e.g., Brown v. Darcy,* 783 F.2d 1389, 1394–95 (9th Cir.1986); *United States v.*

*Givens,* 767 F.2d 574, 585 (9th Cir.1985). Conditioning a fundamental right on the potentially arbitrary results of a polygraph exam might raise due process problems, *see United States v. Redondo–Lemos,* 955 F.2d 1296, 1298–99 (9th Cir.1992), and we are well-advised to interpret the agreement in a way which avoids those concerns.