**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Sergio Rafael GONZALEZ,**
**Defendant–Appellant.**

**No. 92–50268.**

United States Court of Appeals,
Ninth Circuit.

Dec. 4, 1992.

Janice D. Hogan, San Diego, CA, for defendant-appellant Sergio Rafael Gonzalez.

John P. Pierce, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee U.S.

Before: TANG, BEEZER and KOZINSKI, Circuit Judges.

## ORDER

On June 1, 1992, appellee moved to dismiss this appeal on the basis that appellant

had waived his right to appeal under the provisions of a plea agreement. On June 26, 1992, a panel of this court ordered appellant to submit a statement of the issues he intended to raise on appeal and to show cause why his appeal should not be dismissed. *See United States v. Navarro–Botello*, 912 F.2d 318 (9th Cir.1990).

In his response, appellant contends, among other issues, that the government breached the plea agreement by opposing a two-level reduction in sentencing for acceptance of responsibility.

If appellant's contention is true, appellant may be entitled to specific performance or some other relief. *See United States v. Goroza*, 941 F.2d 905 (1991). We do not decide the merits of appellant's contention that the government breached the plea agreement.[1] However, appellant's contention calls into question the validity of the waiver. This issue should be resolved by a merits panel, along with any other issues that the merits panel determines are properly before it. Therefore, appellee's motion to dismiss is denied. *Cf. United States v. Hooten*, 693 F.2d 857 (9th Cir. 1982).

Appellant's opening brief and excerpts of record are due January 11, 1993; appellee's brief is due February 10, 1993; the reply brief, if any, is due February 24, 1993.

KOZINSKI, Circuit Judge, dissenting: *

Like every other circuit to consider the issue, we have held that plea agreements waiving defendants' right to appeal are valid and enforceable. *See, e.g., United States v. Navarro–Botello*, 912 F.2d 318, 321–22 (9th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992); *United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir.1991).[1] These cases present a question of exceptional importance:

Is the government entitled to the benefit of its bargain by obtaining the dismissal of an appeal brought in contravention of such a plea agreement, without incurring the cost and delay of briefing the case on the merits? By refusing to dismiss the appeals in these two cases, my colleagues answer this question in the negative. Because I believe this is inconsistent with *Navarro–Botello* and *Bolinger,* because it imposes an unwarranted burden on this court and because it will make such plea bargains less attractive to the government, to the ultimate detriment of defendants willing to abide by their terms, I dissent.

I

*United States v. Arana–Galicia,* No. 91–50846.

In February 1991, Jose Manuel Arana–Galicia was indicted for possessing marijuana with intent to distribute and aiding and abetting possession of marijuana with intent to distribute. 18 U.S.C. § 2, 21 U.S.C. § 841(a)(1). He pleaded guilty pursuant to an oral agreement. RT 9/3/91 at 5. Arana's lawyer recited the terms of the plea bargain:

> [T]he Government has agreed in exchange for his plea to dismiss the underlying indictment at the time of sentencing, that the readily provable amount of marijuana in this case is between 80 and a hundred kilos.... The Government will recommend acceptance of responsibility. The Government will recommend the low end of the guidelines. The Government ... will recommend a downward departure ... to 33 months in custody.... *Mr. Arana will waive all appellate rights with respect to sentencing if the Government complies with the plea bargain.*

*Id.* at 16–17 (emphasis added).

Nonetheless, Arana filed a notice of appeal. His lawyer, Assistant Federal Public

---

1. *Cf. United States v. Santiago–Martinez,* 980 F.2d 582 (9th Cir.1992). (Appeal dismissed by merits panel after briefing was completed on the ground that appellant expressly waived his right to appeal the sentence.)

* This dissent also applies to *United States v. Arana–Galicia,* 981 F.2d 1044 (9th Cir.1992), which follows.

1. *Accord United States v. Melancon,* 972 F.2d 566 (5th Cir.1992); *United States v. Rutan,* 956 F.2d 827, 829 (8th Cir.1992); *United States v. Wiggins,* 905 F.2d 51, 53–54 (4th Cir.1990).

Defender David J. Cohen, moved in this court to be relieved as counsel on the basis that his client had waived any right to appeal in the plea agreement. The request was summarily denied for failure to comply with section 5(a) of the Revised Provisions for the Representation on Appeal of Persons Financially Unable to Obtain Representation (request that counsel be relieved must include client's consent). Unable to obtain his client's consent, Cohen again moved to withdraw as counsel, reiterating his view that Arana had forfeited the right to appeal. In June, an earlier motions panel ordered Cohen to show cause why the appeal should not be dismissed on the basis of the waiver. Cohen responded by stating—for the third time—that he did not think Arana was entitled to appeal and that he could not in good faith continue to represent him.

The matter was then presented to us, and we ordered the government to file a supplemental brief on whether the appeal should be dismissed, in response to which the government has urged that we do so. My colleagues now refuse to dismiss the appeal; deny Cohen's request to withdraw; order him to submit an *Anders* brief; and set this case for briefing on the merits. I'm at an utter loss to understand why.

Arana doesn't argue that the government failed to hold up its end of the bargain. The prosecution in fact complied with each and every one of its obligations under the plea agreement. It agreed at sentencing that the amount of marijuana was between eighty and one hundred kilos, yielding an offense level of 24. RT 11/25/91 at 9–10. It recommended an acceptance of responsibility reduction, *id.*, and a three-level reduction for substantial assistance, RT (sealed sidebar conference) 12/3/91 at 3, 6–7. The court accepted all of the government's recommendations. RT 12/3/91 at 3. The court ultimately imposed 27 months in custody, even though the government had only promised to recommend 33 months. *Id.*

Nor does Arana contend that his guilty plea, entered in open court, wasn't knowingly and voluntarily made, the standard by which we review it. *See Brady v. United States*, 397 U.S. 742, 747–48, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970). Chief Judge Keep reviewed all of the terms of the agreement with Arana, RT 9/3/91 at 16–22, and she reiterated at sentencing that he had waived his right to appeal, RT 12/3/91 at 4–5. Arana's counsel now states that "[i]n my opinion, Mr. Arana's waiver of appeal was knowing and voluntary.... Mr. Arana validly waived his appeal." Declaration of David J. Cohen in Support of Motion to Show Cause Why Appeal Should Not Be Dismissed, 6/18/92 at ¶ 7. He also recognizes that "Mr. Arana can only succeed in this appeal if he demonstrates that his waiver was not knowing and voluntary. I cannot ethically assert such a claim because I do not believe it has any merit." *Id.* ¶ 9.

*United States v. Gonzalez*, No. 92–50268.

Sergio Gonzalez, an I.N.S. inspector, pleaded guilty to charges of accepting bribes and conspiring to accept bribes in exchange for permitting vehicles he suspected of transporting cocaine to enter the United States without inspection. 18 U.S.C. §§ 201(b)(2), 371. In return for the dismissal of certain other charges pending against him, he also signed a written plea agreement waiving his right to appeal "any sentence imposed at or below the U.S.S.G. range determined to apply by the Probation Department or the District Court." Plea Agreement, 10/29/91 at ¶ 11. As part of the plea agreement, the government undertook as follows:

> The Government agrees that if the Court finds that defendant Gonzalez accepts responsibility for his offense, the Government will not oppose a two-level reduction pursuant to U.S.S.G. § 3E1.1.

*Id.* ¶ 9. Gonzalez appealed, and the government moved to dismiss the appeal based on the plea agreement. An earlier motions panel ordered Gonzalez to submit a statement of the issues he wished to raise on appeal, and he has listed several, including whether he was sentenced under the appropriate Guideline section and whether an upward adjustment for abuse of trust was

proper. The government's motion to dismiss is now before us.

As a threshold matter, Gonzalez argues that the government broke its promise not to oppose an acceptance of responsibility reduction. The probation officer recommended a two-level reduction for acceptance of responsibility, but the government objected. RT 3/2/92 at 7. The court tentatively ruled that "I think I am going to ... give him ... acceptance of the responsibility." *Id.* at 14. The prosecutor then explained "[t]he reason[s] that the government is urging acceptance of responsibility not be given." *Id.* at 15. He concluded them by saying that until Gonzalez "is willing to step up to the podium and tell the court, I did it for greed, we do not believe that he has accepted responsibility for the offense." *Id.* at 16. The court observed that "[t]he prosecutor points out a very good point, he is not willing to accept full responsibility." *Id.* at 17. The court then ruled that "I won't deduct two points for acceptance of responsibility." *Id.* at 18.

## II

**A.** As we recognized in *Navarro–Botello*, "public policy strongly supports plea agreements, such as the one[s] made by [appellants in these cases]." 912 F.2d at 321. Plea bargains are an important—indeed an essential—component of our criminal justice system; they provide vast benefits to the government, to our courts, to the public and to criminal defendants. *See, e.g.,* Frank H. Easterbrook, *Plea Bargaining as Compromise,* 101 Yale L.J.1969, 1975 (1992); *see also* Fed.R.Crim.Proc. 11.[2] As we have also recognized, "[p]lea bargains are contractual in nature and must be measured by contract law standards. The application of contract law to plea agreements is premised on the notion that the negotiated guilty plea represents a bargained-for quid pro quo." *United States v. Escamilla,* 975 F.2d 568, 570 (9th Cir.1992) (citations and internal quotation marks omitted).

When the plea agreement contains a clause waiving the defendant's right to appeal, it becomes a negotiated aspect of the deal. The assurance that the plea won't be set aside on appeal enables the prosecutor to cut short the time and other resources she will devote to the case. *See Navarro–Botello,* 912 F.2d at 322. The courts also benefit when the case is put to rest, obviating the need for a judicial resolution of the matter. The public receives a benefit because its servants in the judicial and executive branches are freed to devote their limited resources to other cases. And last—but by no means least—the defendant receives a benefit in the form of reduced charges, a favorable sentence recommendation or some other substantial advantage to which he wouldn't otherwise be entitled.

The defendant breaches the contract when he nevertheless files a notice of appeal after agreeing not to do so, thereby denying the government, the public and the courts the benefit of the plea agreement. I see no justification for abetting this duplicity by ordering a reluctant defense lawyer to file a brief, compelling the government to respond and requiring a merits panel to consider the very appeal the defendant agreed not to take. Even if the merits panel eventually concludes that Arana's appeal is meritless (as I'm confident it will), substantial expenditures of prosecutorial and judicial resources will already have been wasted. It is precisely to avoid the expenditure of these resources that the government includes no-appeal clauses in many plea bargains.

Because the terse order in *Arana* doesn't explain the majority's reasons for refusing to dismiss the appeal, I can only surmise why it's doing so. The part of the order which calls for attorney Cohen to file an *Anders* brief suggests my colleagues harbor the suspicion that the record here, after all, might contain some basis for setting aside the conviction or the sentence. *Anders* itself stands for the proposition that a

---

**2.** Indeed, 85% of all federal criminal convictions in the year ending June 30, 1989, the most recent year for which statistics are available, were settled by a plea of guilty. *See* U.S. Dep't of Justice, Sourcebook of Criminal Justice Statistics 502 tbl. 5.25 (Kathleen Maguire & Timothy J. Flanagan eds. 1990).

defense lawyer's representation that there are no viable issues on appeal doesn't bind us or the defendant. *Anders*-type cases involve defendants with an unimpaired right to appeal; we require a brief so the defendant's rights will not be extinguished just because the lawyer failed to detect or appreciate some error buried deep in the record.

It is a much different matter, however, when the defendant has ceded his right to appeal. Any arguable issues contained in the record become irrelevant; only the plea bargain matters, because the defendant has traded away the right to have *any* issues—even strong, viable ones—considered on appeal. When, as in *Arana–Galicia,* the defense lawyer who negotiated the plea represents to us that the defendant entered the agreement knowingly and voluntarily, the district court makes findings to the same effect and everyone agrees that the government faithfully upheld its end of the deal, continuing with the appeal becomes little more than a charade. And a costly charade, at that: A pointless expenditure of time, effort and money, leading to only one possible result—the eventual dismissal of the appeal.

Gonzalez's case is somewhat more complicated. He, at least, raises a bona fide argument that the government violated the terms of the plea agreement by refusing to recommend a downward adjustment based on acceptance of responsibility. "The Supreme Court and this court have unequivocally held that prosecuting attorneys must keep promises made in plea agreements." *United States v. Fisch,* 863 F.2d 690, 690 (9th Cir.1988) (per curiam). Where the prosecution fails to make a promised sentencing recommendation, it breaches the plea agreement. Arguably, then, Gonzalez should be permitted to appeal on the narrow issue of whether the government has breached its responsibilities under the plea agreement. *But see* Part II(B), *infra.* There's no justification, however, for permitting Gonzalez to bring an appeal as to any other issue, as he now proposes to do.

*See* Statement in Response to Motion to Dismiss Appeal, 7/7/92 at 2 (listing among the issues to be presented on appeal the propriety of the sentencing range selected by the district court and whether Gonzalez deserved an upward adjustment for abuse of trust). Were we to conclude the government breached its side of the bargain, the *most* Gonzalez could possibly hope to receive is a two-level downward departure for acceptance of responsibility.[3] Alternatively, of course, defendant could seek to set aside the plea bargain and go to trial, obviously risky business. In no event, however, is defendant entitled to keep the benefit of the bargain while, at the same time, ignoring his side of the deal by launching a broadside attack on the sentence.

Having been advised by the defendant that he seeks to raise issues on appeal in addition to the breach of the plea bargain, my colleagues nonetheless set a briefing schedule that does not limit Gonzalez to the one issue that he is (arguably) entitled to appeal. The government will obviously have to respond to whatever issues Gonzalez raises, even if the merits panel ultimately concludes such claims aren't "properly before it," *see* maj. op. at 1038. The only inference to be drawn from this ruling is that a defendant need do no more than raise a single issue that calls into question the validity of the plea bargain before he can impose on the government the cost of defending a full merits appeal. We shouldn't let one side so easily deprive the other of the benefit of its bargain.

**B.** Although it is a closer question, I also believe that Gonzalez is precluded from raising by way of direct appeal even his claim that the government welshed on the plea bargain. *Navarro–Botello* suggested that a waiver of the right to appeal might not preclude the appeal if the sentence imposed by the court did not conform to the negotiated agreement. 912 F.2d at 321. In *United States v. Serrano,* 938 F.2d 1058, 1060 (9th Cir.1991), we subsequently permitted an appeal on the basis of

---

**3.** More likely, defendant would only be entitled to a remand for the district court to *consider* such a downward departure in light of a favorable recommendation by the government.

the defendant's argument that his sentence wasn't in accordance with the plea agreement.

What neither *Navarro–Botello* nor *Serrano* addressed, however, is the general rule that an issue may not normally be raised on appeal unless it has first been presented to the district court.[4] There might be cases where an issue as to the validity of the plea bargain is unknown to the defendant and no objection can be made below. But the ordinary case where the defendant claims the government didn't keep its side of the plea bargain—like this case—doesn't fall into that narrow category. Whether or not the government has lived up to an agreement to make a certain sentencing recommendation is apparent as soon as the prosecutor opens her mouth in court. If the government lawyer doesn't recommend as she promised, defense counsel is perfectly capable of raising an objection right there and then, obtaining a ruling from the district court. No such objection was raised here; no such ruling was obtained; no such issue was preserved for appeal.

I see no justification for creating a wholesale exemption from the contemporaneous objection requirement in cases where a defendant claims that there's a defect in the plea bargain. Indeed, all of the policies of the contemporaneous objection rule apply with particular vigor to such a situation. To begin with, whether a plea bargain is defective or has been violated normally turns on facts not in the record. The government's failure to live up to its side of the bargain is only one such issue; others include whether the defendant was properly advised by counsel, whether collateral promises were made to him, whether he was competent to enter the plea and whether he spoke and understood English.

In *Gonzalez*, for example, it isn't at all clear from the terms of the plea bargain whether the government had agreed not to argue against a downward departure under any circumstances (the defendant's position) or whether it merely agreed that *if* the district court found acceptance of responsibility, the prosecutor wouldn't argue against the court's exercise of discretion to depart downward (presumably the government's position). Similarly, in *Serrano* we remanded to the district court to resolve factual disputes bearing on whether the defendant had fulfilled his obligation to cooperate with the government. 938 F.2d at 1061–62. When an objection is raised in the district court, the inquiry can be made before an appeal is taken, which is the ordinary way of proceeding in such matters.

Furthermore, plea bargains are contracts and their interpretation, including the appropriate remedy for their breach, depends upon "what the parties to the plea bargain reasonably understood to be the terms of the agreement." *Escamilla*, 975 F.2d at 571 (internal quotation marks omitted). Again, *Gonzalez* illustrates why the district court is best equipped to make this determination in the first instance. The agreement specifies that if "Gonzalez fails to comply with any of the above terms and conditions, [it] is null and void." Plea Agreement ¶ 13. By its terms this clause applies only to breaches by defendant, but Gonzalez contends that he's entitled to the same remedy for breaches by the government. *See* Statement in Response to Motion to Dismiss Appeal, 7/7/92 at 2. This is precisely the type of issue best addressed by the district court in the first instance.

Finally, the district court has ways of obviating the issue if given a chance to do

---

4. Because the statement in *Navarro–Botello* was dictum, there is understandably no reference in the opinion to whether the defendant objected in the district court that the sentence violated the agreement. Likewise, there is no mention of a timely objection in *Serrano*, although Serrano had objected to other aspects of his sentence. *See* 938 F.2d at 1059–61. These cases stand only for the proposition that an appeal may be taken when the court does not follow the plea agree-

ment in sentencing the defendant. Neither is inconsistent with my position that the *method* by which a defendant must challenge a departure from the agreement is a timely motion or objection in the district court. *Cf. United States v. Vroman*, 975 F.2d 669, 672 (9th Cir.1992) (circuit precedent not binding when prior panel fails to consider an argument later panel finds persuasive); *United States v. Faulkner*, 952 F.2d 1066, 1071 n. 3 (9th Cir.1991) (same).

so. Had the district court been alerted to the government's promise, it might have given the defendant what he wanted simply to avoid further complications. Or the court might have said, "I don't care what the government argues, I'll deny a downward departure because defendant hasn't shown sufficient contrition." Or, it might have just set aside the plea bargain and let the parties proceed with a trial. In any event, the issue of the government's alleged breach would have disappeared.

In sum, I would allow an appeal in a case such as Gonzalez's only where the validity of the plea bargain was first challenged in the district court or where there is a reason the issue couldn't have been raised there. In all other cases, if that plea bargain contains a no-appeal clause, I would dismiss the appeal. An alternative approach might be to remand automatically such cases to the district court for further fact-finding and initial determination of the alleged breach, much as we do in cases that raise a *Houston v. Lack* issue. *See, e.g., Vaughan v. Ricketts,* 950 F.2d 1464, 1468 (9th Cir.1991).[5] Or we might rule that defendants who have given up their right to appeal may challenge the validity of the plea agreement (including the government's compliance therewith) only by way of collateral attack, as we have done for claims of ineffective assistance of counsel. *See, e.g., United States v. Simas,* 937 F.2d 459, 463 (9th Cir.1991); *United States v. Wagner,* 834 F.2d 1474, 1482–83 (9th Cir. 1987). This latter approach is supported by the same rationale we apply to cases making a claim of ineffective assistance of counsel: "We prefer appellants to raise such claims in a habeas proceeding because it permits the district judge first to decide whether the claim has merit, and second, if it does, to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted." *United States v.*

*Molina,* 934 F.2d 1440, 1446 (9th Cir.1991); *accord United States v. Rewald,* 889 F.2d 836, 859 (9th Cir.1989), *amended,* 902 F.2d 18 (9th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990). Under no circumstance, however, would I allow a defendant who failed to raise the issue in the district court to take a full-blown direct appeal in contravention of his plea bargain. By ruling to the contrary, the majority seriously undermines the important policy of *Navarro–Botello* and *Bolinger.*

### III

No doubt my colleagues believe they err on the side of caution by allowing these appeals to proceed despite the agreement that they were not to be filed in the first place. But caution can be a costly commodity, and the price for it will be paid in large part by defendants in future cases. To the extent the government can never be certain whether, and to what extent, we will force it to defend an appeal even after a *Navarro–Botello* plea bargain, it will surely factor that risk into its calculus before entering such agreements. A harried Assistant United States Attorney might well be willing to strike a generous deal with a defendant if she can be sure that the case will promptly and permanently disappear from her docket; the incentive to settle will be decidedly less if she has to contemplate the possibility that she will, nonetheless, have to defend a full-blown appeal on the merits. Criminal defendants usually have few enough bargaining chips; sparing the government the time and expense of a trial and appeal is the primary currency in which they must deal. To the extent our rulings today suggest that the government can never enjoy such an assurance of repose, we shave the already thin coin most defendants have in buying a reduction in punishment.

5. *Houston v. Lack,* 487 U.S. 266, 108 S.Ct..2379, 101 L.Ed.2d 245 (1988), held that pro se prisoners are deemed to file their notices of appeal within the meaning of Fed.R.App.Proc. 4(a)(1) at the time they deliver them to prison authorities. The exact time when a prisoner hands his notice of appeal to the warden will never be apparent from the face of the record. Because

of the need for factual determinations in such cases, we decided in *Miller v. Sumner,* 872 F.2d 287, 289 (9th Cir.1989) (per curiam), that a "[r]emand to the district court for a determination of timeliness appears to be the only available method of following the dictates of *Houston.*"

Also worth noting is the misallocation of resources devoted to paying public defenders and appointed counsel when we force them to file *Anders* briefs in cases like *Arana–Galicia.* As I have already noted, such a brief has no chance whatsoever of success because all of the issues that defendant might raise are foreclosed by the plea bargain. Do we really enjoy the luxury of commanding such waste? We are all aware that during the last fiscal year the federal judicial system was required to suspend payments to attorneys appointed under the Criminal Justice Act because the money allocated by Congress for that purpose simply ran out. *See* Stephen Labaton, *Cash–Poor Defendants May Soon Lack Lawyers,* N.Y. Times, Aug. 9, 1992, at D18. Does squandering public funds for pointless briefs in hopeless appeals really promote the interests of obtaining competent counsel for defendants who have not bargained away their right to appeal?

Finally, we should pause to consider the awkward position in which we place defense counsel like Mr. Cohen. How can a defense attorney, acting in good faith, negotiate for a no-appeal clause in a plea bargain when he knows full well he has not just the opportunity but the *obligation* to turn around and violate that clause by pursuing an appeal? Cohen, it seems to me, has tried hard to be a forceful advocate for his client, while acting in good faith toward the court and opposing counsel. Such professional integrity deserves commendation, not the rebuke implicit in our order. By refusing to accede to defense counsel's eminently reasonable request that he be let out of an impossible situation we have made it much more difficult for someone in Cohen's position to discharge all his professional and ethical responsibilities. We should think long and hard before we force a member of our bar into such a tight box.

Worse still, once it's established that *Navarro–Botello* waivers do not preclude appeal, attorneys will feel compelled to file a notice of appeal in every case to protect themselves from claims of malpractice or ineffective assistance of counsel. What we have tolerated out of an abundance of caution in a single case will surely become the norm, and we'll all fare the worse for it. Because I believe the majority's orders today impose unacceptable—and ultimately unbearable—costs upon all of the beneficiaries of our plea bargaining system, I respectfully dissent.