IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
OCTOBER SESSION, 1999

FILED

January 4, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

ALICIA SHAYNE LOVERA,         *
                              *     C.C.A. No. 03C01-9901-CC-00030
        Appellant,            *
                              *     SEVIER COUNTY
vs.                           *
                              *     Hon. REX H. OGLE, Judge
STATE OF TENNESSEE,           *
                              *     (Post-Conviction)
        Appellee.             *

For the Appellant:                  For the Appellee:

**Douglas A. Trant**                **Paul G. Summers**
Attorney for the Appellant          Attorney General and Reporter
900 S. Gay Street, Suite 1502
Knoxville, TN  37902                **Ellen H. Pollack**
                                    Assistant Attorney General
                                    Criminal Justice Division
                                    425 Fifth Avenue North
                                    2d Floor, Cordell Hull Building
                                    Nashville, TN 37243-0493

                                    **Alfred C. Schmutzer, Jr.**
                                    District Attorney General
                                    Sevier County Courthouse
                                    125 Court Avenue, Suite 301-E
                                    Sevierville, TN  37962

OPINION FILED: _____

AFFIRMED

**David G. Hayes,** Judge

The appellant, Alicia Shayne Lovera, appeals from the trial court's denial of her petition for post-conviction relief. In November 1994, the appellant was charged with the first degree premeditated murder of her husband Kelly J. Lovera. A Sevier County jury found the appellant guilty of the offense charged. Prior to the sentencing hearing, the appellant, pursuant to a negotiated plea with the State, pled guilty to first degree murder in return for a sentence of life with the possibility of parole. The appellant filed a *pro se* petition for post-conviction relief, alleging, *inter alia*, ineffective assistance of trial counsel. The petition was amended following appointment of counsel. After a hearing on the petition, the Sevier County Criminal Court dismissed the petition. This appeal follows.

After review of the record, we affirm.

**Background**

On November 6, 1994, United States Park Rangers located a Jeep at the bottom of a one hundred foot embankment on U.S. Highway 441. Inside the Jeep, they discovered the body of the deceased, Kelly J. Lovera. The deceased had multiple wounds to the head. An investigation ensued resulting in the arrest of the appellant and Brett Rae, the co-defendant in this case and the alleged lover of the appellant.

The appellant and her co-defendant were jointly tried. A jury found both the appellant and her co-defendant guilty of first degree murder. Although the death penalty was not sought, the State had provided notice that it was seeking a sentence of life without the possibility of parole. On the morning of the sentencing

hearing, the appellant entered into an agreement with the State which provided that she would plead guilty to first degree murder in exchange for a sentence of life with the possibility of parole. In return, the State relinquished the right to seek a sentence of life without parole. The judgment form also reflects that the appellant waived her right to file either a direct appeal or a collateral post-conviction attack of her conviction.[1]

On March 12, 1997, the appellant filed the instant petition for post-conviction relief. The petition may be generally summarized as alleging (1) trial counsel was ineffective for failing to advise her of issues viable for direct appeal of her conviction; (2) her plea was coerced and involuntary; and (3) that her conviction is void as violating the protection against double jeopardy.[2]

A hearing was held on the petition on December 17, 1998. The appellant testified that she was originally represented by retained counsel, who "did absolutely no preparation for almost nine months." After retained counsel was permitted to withdraw, the court appointed the Office of the Public Defender as substitute counsel. The appellant explained that she only met with the public defender "several times." She admitted that "I know he tried to get it delayed so that he could have more time to prepare. As far as what he actually did to prepare I'm not knowledgeable enough to know exactly what he did." The appellant continued to provide illustrations of her counsel's alleged ineffectiveness including, his advice encouraging her to testify at trial, his failure to object to hearsay testimony, and his failure to prepare for the sentencing hearing. She conceded that counsel did advise

---

[1]Neither a transcript of the guilty plea hearing nor a copy of the plea agreement is provided in the record on appeal.

[2]Included within the petition are numerous claims of error, including but not limited to: (1) The appellant was questioned by police after she requested counsel; (2) Bruton violations; (3) Brady issues; (4) failure to grant change of venue; (5) prosecutorial misconduct; (6) failure to object to hearsay; (7) denied right not to testify; (8) trial counsel misstated facts; (9) search warrant invalid; (10) unconstitutional search of her person; (11) range of punishment jury instruction.

her that issues regarding the search of her apartment could be raised on appeal in addition to challenging the results of the "Luminol" test introduced at trial which established the presence of blood at the crime scene.

With regard to her guilty plea, the appellant stated that, when first approached by counsel about the possibility of a plea immediately following the jury's verdict, she informed counsel that she "couldn't answer him . . .she couldn't even think much less give him an answer." The next morning, when counsel again questioned the appellant about the plea, she responded that "I thought I probably ought to keep whatever rights I had left. . . ." The appellant stated, that counsel informed her that the State had new evidence against her and that if she accepted the plea bargain she would be able to see her children within the next ninety days. She averred that trial counsel informed her that she "would probably do eighteen" years on a sentence of life with the possibility of parole and that she later discovered that she would have to serve a minimum twenty-five years before reaching parole eligibility. The appellant conceded that she agreed to accept the plea agreement, however, she did "not really" understand that she was relinquishing her right to a direct appeal, post-conviction relief, and habeas corpus relief. She admitted that she understood that she was pleading guilty to the offense although she had been found guilty by a jury, specifically she inquired if she could plead no contest instead of pleading guilty. The appellant admitted that the trial court informed her of her rights, including her right to appeal. She stated that, in hindsight, she "gained absolutely nothing" from her plea and that "[she] would have been a whole lot better off to let you all give me life without parole, because then I wouldn't have waived all my rights."

On cross-examination, the State elicited from the appellant that she was an honor student in high school and, after graduating, attended college for one and one-half years. She conceded that her trial counsel filed an interlocutory appeal on

4

the search and seizure issue and that he had informed her that this issue was meritorious for appeal.

The appellant's trial counsel testified on behalf of the State. Counsel stated that, after being appointed to represent the appellant, he met with her "on numerous occasions" to discuss her case, specifically on the issue of her testifying. Counsel stated that he "never told her she had to testify" and that "[s]he never told [him] she did not want to testify." Indeed, he remarked that the appellant "always did want to get up and tell her side of the story." Counsel explained that, after the guilty verdict had been returned by the jury, he discussed a plea agreement with the State wherein the appellant would agree to a sentence of life with the possibility of parole in exchange for waiving the right to challenge the conviction on appeal. When he presented the offer to the appellant, counsel reviewed "specific issues" that were cognizable on appeal. The appellant agreed to relinquish her right to appeal in exchange for accepting a sentence of life with parole. Counsel informed her that "an earliest eligibility for parole [was] at twenty-five years." As an additional condition of her acceptance, although not specifically a part of the plea, an arrangement was made for the appellant to visit with her children on at least one occasion within ninety days following entry of her plea. Counsel stated that the trial court also clearly advised the appellant of the effect of her plea for future challenges to the conviction.

Regarding potential aggravating and mitigating proof for the sentencing hearing, counsel remarked:

> . . .we discussed this was a difficult case to mitigate after the jury had rendered their judgment. It's unlike most other cases I've ever dealt with where you've got an obvious explanation for you client's behavior and somehow you can explain that to the jury.
> But basically, you know, we had prepared, were prepared to present evidence of course of the untimely and unfortunate death of Brent Mills who she was very close to as well as other evidence regarding her, the person she was. That was presented, a lot of it, in the guilt/innocence

5

phase, as to just what an outstanding person she was particularly in high school as I remember. And we had teachers of hers in high school that would testify as to her outstanding character in high school. Her current employer at the time just prior to her incarceration that would testify as to her good character, that she was a good worker and that sort of thing.

After hearing closing argument of respective counsel, the trial court stated its findings of fact and conclusions of law on the record:

. . .[T]he issue is whether or not she knowingly and voluntarily waived her rights to appeal and agreed to a life sentence as opposed to life without parole. At that juncture right or wrong she stood guilty of First Degree Premeditated Murder. The evidence that had gone into the trial of this case was overwhelming against her. She was caught in lie after lie and in all candor the Court would have to say that her memory at least is pretty selective as she sits here today. She says that she didn't understand this and she didn't understand that but she was the one that brought up about a nolo plea to her attorney. The Court finds she is very intelligent, that she knew what was going on.

. . .

Prior to taking this plea agreement,. . . this Court went through those rights very specifically with Mrs. Lovera and asked her and gave her every opportunity to discuss with the Court those issues. And she said certainly in there that [counsel] had done the best that he could. . . .

. . .

But to say . . . that [counsel] should have guaranteed her any outcome on appeal certainly is not correct. . . .[I]n effect it is asking [counsel] . . . to be a fortune teller. And unfortunately for Mrs. Lovera she had to make a decision then. She had to either go to a hearing on life without parole or take a life sentence. . . . I am satisfied that she understood what was going on. Obviously she wasn't happy . . . but happy is not what first degree murder trials are about. She made some tough choices both during the trial, she got caught in some very horrendous lies that destroyed her defense. And she comes back in here today and tries to lie again.

. . .

And it is clear that Mrs. Lovera always has a lot to say but she has always got caught up in her own misstatements and she has here today. Her evidence is not credible as to what she says [counsel] did or did not tell her. The Court finds that [counsel] has been very credible and did everything that he could do. He fully advised her of her right to appeal. She and I discussed that and she waived her rights to appeal. She and I discussed that and she waived her rights to appeal in exchange for a life sentence and that's what she got.

The Court finds that the petition for post-conviction relief and or habeas corpus is completely without merit and the same is hereby dismissed . . . .

6

## Analysis

## I. Waiver of Right to Post-Conviction Remedies

As part of the appellant's guilty plea, she agreed to waive her right to both a direct appeal of her conviction and her right to pursue post-conviction remedies. Obviously from the posture of this case, this waiver provision was not enforced against the appellant as she did seek post-conviction relief. Thus, the initial inquiry before this court is whether this proceeding was properly entertained by the trial court and, subsequently, whether this cause is properly before this court. After consideration of constitutional principles, we conclude that this case is properly before this court.

Although a criminal defendant may waive the right to a direct appeal as part of a plea agreement,[3] we conclude today that a defendant may not waive his or her right to post-conviction remedies as part of a plea agreement. But see State v. John Joseph Villaneuva, C.C.A. No. 93 (Tenn. Crim. App. at Knoxville, May 30, 1991), perm. to appeal denied, (Tenn. Jan. 6, 1992) (upholding waiver of right to raise ineffective assistance of counsel claim in post-conviction proceeding). Post-conviction proceedings are significantly different from a direct appeal. Unlike a direct appeal, a post-conviction proceeding provides a means of collaterally attacking the constitutional validity of a conviction. See generally Tenn. Code Ann. § 40-30-203 (1997). And, although, generally, a guilty plea entered on the

---

[3]Plea bargains are contractual in nature and therefore, the "negotiated plea represents a bargained for quid pro quo." See United States v. Escamilla, 975 F.2d 568, 571 (9th Cir. 1992). Thus, a provision in the plea agreement waiving the defendant's right to pursue a direct appeal is a bargained for element of the agreement. See United States v. Gonzalez, 981 F.2d 1037 (9th Cir. 1992). This provision is enforceable as long as the waiver is knowing and voluntary. See State v. McKissack, 917 S.W.2d 714, 715 (Tenn. Crim. App. 1995) (footnote omitted). See, e.g., United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); United States v. Bolinger, 940 F.2d 478, 480 (9th Cir. 1991).

competent advice of counsel will be held to waive the majority of the fundamental protections afforded by the Constitution,[4] a guilty plea cannot waive jurisdictional defects. Additionally, a guilty plea cannot waive those constitutional challenges to the resulting conviction if the plea itself was not knowingly and voluntarily entered upon competent advice of counsel. If post-conviction remedies could be waived, a defendant would be precluded from challenging an involuntary guilty plea or one entered upon the ineffective assistance of counsel. It would be unconscionable and against the public policy of this state to insulate a conviction from such challenges. Accordingly, we hold that the portion of the judgment in the case *sub judice* waiving the appellant's right to make application for post-conviction relief is void and unenforceable. See, e.g., Majors v. State, 568 N.E.2d 1065, 1067-1068 (Ind. Ct. Ap. 1991); Hood v. State, 890 P.2d 797, 798 (Nev. 1995). Cf. United States v. Astacio, 14 F. Supp.2d 816, 818-819 (E.D. Va. 1998) (holding, even where a defendant has waived his statutory right to bring a § 2255 motion, he may nonetheless raise claims of ineffective assistance of counsel and the voluntariness of the guilty plea) (citing United States v. Wilkes, 20 F.3d 651, 652- 653 (5th Cir. 1994); United States v. Pruitt, 32 F.3d 431, 432-433 (9th Cir. 1994); United States v.

Abarca, 985 F.2d 1012, 1014 (9th Cir. ), cert. denied, 508 U.S. 979, 113 S.Ct. 2980 (1993)).


## II. Effect of Guilty Plea


Preliminary to our review of the voluntariness of the guilty plea, we address the precise posture of this case. Based upon her entry of a guilty plea following a jury verdict, the appellant argues that her conviction violates the protections against

---

[4]A guilty plea made voluntarily, understandingly, and knowingly effectively constitutes a waiver of the constitutional rights against compulsory self-incrimination, the right to confront one's accusers, and the right to trial by jury, and, except under limited exceptions, the right to direct appeal. See generally Tenn. R. Crim. P. 11(c); 37(b)(2).

double jeopardy. The Fifth Amendment to the United States Constitution and Article 1, Section 10 of the Tennessee Constitution protects the accused (1) against a second prosecution after an acquittal; (2) against a second prosecution after conviction; and (3) against multiple punishments for the same offense. State v. Denton, 938 S.W.2d 373, 378 (Tenn.1996). Double jeopardy becomes a factor only when the defendant faces retrial or multiple punishments for the same crime. Accordingly, the appellant's argument based on the constitutional protection against double jeopardy is without merit.

There are no limitations under the Tennessee Constitution, Criminal Code, or Rules of Court which would *per se* prohibit the entry of a guilty plea after a jury verdict had been returned.[5] A guilty plea is in itself a conviction and is conclusive as to the defendant's guilt. Thus, under the circumstances before us in this case, we construe the appellant's subsequent entry of a guilty plea to effectively supercede the jury verdict of first degree premeditated murder.[6] Cf. Haskins v. Commonwealth, 500 S.W.2d 407, 408-409 (Ky. App. 1973). But see Daye v. Commonwealth, 467 S.E.2d 287, 289 (Va. Ct. App. 1996) (entry of guilty plea after jury verdict is moot). The effect of the guilty plea is to nullify, for all practical purposes, the guilt phase of the trial. Thus, when examining her guilty plea for constitutional infirmities, the reviewing court places the appellant in the same posture as if she had not proceeded to trial.

---

[5]The provision in Rule 11 requiring notice to the court of the existence of a plea agreement prior to trial is not a bar to entering a guilty plea but rather, "subsection (e)(5) . . . permits the trial judge to impose reasonable pretrial time limits on the court's consideration of plea agreements, a practice which will allow maximum efficiency in the docketing of cases proceeding to trial on pleas of not guilty." See Advisory Commission Comments, Tenn. R. Crim. P. 11.

[6]It is without doubt that plea bargaining is an important and widely utilized tool of the criminal justice system for resolving prosecution quickly and economically. See Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621 (1977). By entering into a plea agreement, a defendant admits guilt of the substantive offense often, as in the present case, in exchange for a more lenient sentence. The courts must enforce the defendant's promise, unless otherwise shown to be involuntary or unknowingly entered, in order to carry out the policies that underlie plea bargaining. See generally People v. Fearing, 442 N.E.2d 939, 941 (Ill. App. 1982).

### III. Post-Conviction Claims

Based upon our ruling that the appellant's conviction for first degree murder stems from her plea of guilty to that offense rather than from a jury verdict, our review is limited to the voluntary nature of the plea and the ineffective assistance of counsel regarding the plea. Specifically, in her petition, the appellant alleges that double jeopardy bars her conviction and her plea was involuntary because counsel had failed to advise her of the waiver of her constitutional rights, counsel failed to inform her of viable issues for appeal, counsel misinformed her as to her parole eligibility date, counsel failed advise her of and failed to prepare for a sentencing hearing, and she was coerced into entering the plea out of fear of not being able to visit with her children.

A trial court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. See Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990); Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978), cert. denied, 441 U.S. 947, 99 S.Ct. 2170 (1979). Allegations of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact. See State v. Brenda Anne Burns, No. W1996-0004-SC-R11-CD (Tenn. at Jackson, Nov. 8, 19990 (*for publication*). Although we perform a *de novo* review of the issue, the appellant must still establish his or her allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims

of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made.  See  North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164 (1970).

In Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366 (1985), the United States Supreme Court addressed the issue of alleged involuntary guilty pleas resulting from erroneous or negligent advice by trial counsel.  The result reached was the formulation of a merger of the Strickland test for ineffective assistance and the traditional requirements for a valid guilty plea. The Strickland test provides that, to prevail on a claim of ineffective counsel, the defendant must establish that (1) the services rendered by counsel were deficient and (2) he/she was prejudiced by the deficient performance.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984);  Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).  As applied to guilty pleas, the first prong, deficient performance remains the same, *i.e.*, counsel failed to exercise the customary skill and diligence that reasonably competent counsel would provide under similar circumstances.  See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Walton v. State, 966 S.W.2d 54, 54-55 (Tenn. Crim. App. 1997).  However, the prejudice requirement focuses on whether counsel's ineffective performance affected the outcome of the plea process.  Hill v. Lockhart, 474 U.S. at 58, 106 S.Ct. at 370.  In other words, in  order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  Id.;  See also  Walton, 966 S.W.2d at 55.

Generally, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial.  Hill v. Lockhart, 474 U.S. at 59, 106 S.Ct. at 370.  Indeed, the focus is not only upon the actual "error" committed by counsel, but whether had counsel acted competently (1) would counsel have changed his recommendation as to the

11

plea or (2) would the competent performance have been likely to change the outcome of a trial. See Hill v. Lockhart, 474 U.S. at 59, 106 S.Ct. at 370-371.

In the present case, the post-conviction court concluded that the appellant received the competent assistance of counsel and, consequently, entered her plea knowingly and voluntarily. A trial court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997); Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978), cert. denied, 441 U.S. 947, 99 S.Ct. 2170 (1979).[7] The appellant has failed to include the transcript of prior proceedings, specifically a transcript of the guilty plea proceeding, in the record before this court. See Tenn. R. App. P. 24(b). This Court, therefore, is precluded from conducting an appropriate review on appeal. See State v. Ballard, 855 S.W.2d 557 (Tenn.1993). Accordingly, "[i]n the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App.1991).

Additionally, in evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court held, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. at 31, 91 S.Ct. at 164. In making this determination, the reviewing court must look to the totality of the circumstances. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App.1995), perm. to appeal denied, (Tenn.1996). See also Chamberlain v. State, 815 S.W.2d

---

[7]Notwithstanding this general rule, in State v. Brenda Anne Burns, No. W1996-00004-SC-R11-CD (Tenn. at Jackson, Nov. 8, 1999) (*for publication*), our supreme court held that "[c]ases that involve mixed questions of law and fact are subject to *de novo* review." (citing Harries v. State, 958 S.W.2d 799, 802 (Tenn. Crim. App. 1997)). Specifically, the supreme court determined that issues involving alleged deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact. See State v. Brenda Anne Burns, No. W1996-00004-SC-R11-CD. Although we perform a *de novo* review of the issue, the appellant must still establish his or her allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997).

534, 542 (Tenn. Crim. App.1990), perm. to appeal denied, (Tenn.1991). Indeed, "a court charged with determining whether ... pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his[/her] familiarity with criminal proceedings; whether he[/she] was represented by competent counsel and had the opportunity to confer with counsel about the options available to him[/her]; the extent of advice from counsel and the court concerning the charges against him[/her]; and the reasons for his[/her] decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn.1993).

With these criteria considered, we conclude that the record supports the trial court's findings that counsel had informed the appellant of her right to appeal (including possible issues for appeal), provided relevant sentencing information, and properly advised her regarding the waiver of her constitutional rights. The record supports the trial court's conclusion that the appellant's guilty plea was knowingly and voluntarily entered upon the competent advice of counsel.

After a full consideration of the record, we conclude that the appellant has failed to establish either prong of the Hill v. Lockhart test. For these reasons, we affirm the judgment of the trial court.

_____

DAVID G. HAYES, Judge

13

CONCUR:


_____
JOSEPH M. TIPTON, Judge


_____
DAVID H. WELLES, Judge