## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
### AT KNOXVILLE
### NOVEMBER SESSION, 1999

**FILED**

January 18, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **BRETT RAE,** | * | |
| | * | **C.C.A. No. 03C01-9901-CC-00029** |
| **Appellant,** | * | |
| | * | **SEVIER COUNTY** |
| **vs.** | * | |
| | * | **Hon. Rex H. Ogle, Judge** |
| **STATE OF TENNESSEE,** | * | |
| | * | **(Post-Conviction)** |
| **Appellee.** | * | |

For the Appellant:

**Melinda Meador**
Bass, Berry & Sims PLC
900 S. Gay Street, Suite 1700
Knoxville, TN 37902

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Ellen H. Pollack**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**Alfred C. Schmutzer, Jr.**
District Attorney General

**Charles Atchley, Jr.**
Asst. District Attorney General
Sevierville, TN 37862

OPINION FILED: _____

AFFIRMED

**David G. Hayes,** Judge

**OPINION**

The appellant, Brett Rae, appeals the trial court's denial of his petition for post-conviction relief.  In November 1994, the appellant and a co-defendant were charged with premeditated first degree murder.  Following a jury trial in the Criminal Court of Sevier County, the appellant was found guilty of the indicted offense.  Immediately prior to the jury fixing his punishment,[1] the appellant, pursuant to a negotiated agreement, pled guilty to first degree murder in exchange for a sentence of life with the possibility of parole.  The appellant,  proceeding *pro se,* subsequently filed a petition for post-conviction relief, alleging, *inter alia*, ineffective assistance of trial counsel.  The petition was amended following appointment of counsel.  The trial court denied the relief sought and this appeal follows.

After review of the record, we affirm.

**Background**

On November 6, 1994, park rangers discovered a jeep on the slope of an embankment off Highway 441 inside the Great Smoky Mountains National Park.  The jeep was lodged against a tree approximately 100 feet from the highway.  Inside the jeep the rangers observed the body of the deceased, Kelly J. Lovera.  The victim was lying in the back floorboard in a pool of blood.  It was immediately apparent, based upon the extensive nature and location of the injuries and the position of the body in the jeep, that death was not attributable to the jeep's impact with the tree.  An investigation ensued, resulting in the arrest of the appellant and his lover, Shayne Lovera, the wife of the victim.

---

[1] The State did not seek the death penalty; however, it did give notice to the appellant of its intent to seek life without parole.

Proof at trial established that the victim was bludgeoned to death in his apartment, his body was placed in the jeep and then driven into the National Park by the appellant, where the vehicle was pushed off the highway. Shortly after the murder, the appellant confided to two of his friends that he had ". . . put [the victim] over a hundred foot embankment." In addition to the volunteered statements discussing his involvement in the murder, he also discussed with his two friends his relationship with the victim's wife, his previous unsuccessful attempt to kill the victim, and various other plots which he had devised to kill Lovera. Additionally, physical evidence found at the victim's apartment and in the National Park connected the appellant to the crime.

The appellant and his co-defendant were tried jointly. A jury found both guilty of first degree murder. Prior to the sentencing hearing, the appellant negotiated an agreement with the State which provided that, in exchange for a guilty plea to first degree murder, he would receive the minimum sentence of life with the possibility of parole. As part of the plea agreement, the appellant waived his right to file either a direct appeal or a collateral post-conviction attack of his conviction.

On March 10, 1997, the appellant filed the instant petition for post-conviction relief. The petition may be summarized as alleging (1) trial counsel was ineffective for encouraging appellant to accept the State's offer of life with the possibility of parole, failing to prepare for mitigating circumstances at the sentencing phase of the trial, failing to properly conduct a pre-trial investigation, failing to adequately consult with the appellant during critical stages of the proceedings, and failing to advise the appellant of his rights to direct appeal and collateral attack of his conviction; (2) deficient performance of counsel at trial; (3) his guilty plea was coerced and involuntary; and (4) that his conviction is void as violating the protection against

3

double jeopardy.[2]

A hearing was held on the petition on December 18, 1998.  The appellant provided testimony that, on the morning after the guilty verdict had been returned, counsel approached him with information that "there was a plea made available . . . to plead guilty to First Degree Murder and accept this sentence of life with a possibility of parole."  Counsel informed him that in order to accept this plea, he would have to agree "that part of the plea would be waiving my appeal."  The appellant conceded that, before accepting his plea, the trial court had "extensively . . . [gone] into the appeal process."  He also conceded that he admitted his guilt at the guilty plea hearing and that he stated that his "attorneys did the best they could do."  However, the appellant explained that he made these admissions only because his attorneys instructed him to do so.  Moreover, although he agreed that he believed himself to be guilty of first degree murder at the time of his plea, he now retracts that admission.  Additionally, the appellant testified that he agreed to the plea offer because his co-defendant "asked [him] to take it  and [he] said okay, well, let's do it."  On re-direct examination, the appellant stated that his attorneys never "discussed" any possible defenses with them.  He also stated that counsel only consulted with him a "few" times prior to trial.

Robert Ritchie, a Knoxville attorney, testified that he was retained by the appellant's father to represent the appellant immediately following his arrest on the murder charge.  Richie's representation extended over a period of two to three months.  Ritchie testified that he met with the appellant and initiated an investigation which included obtaining voluntary discovery from the District Attorney General's Office.  Ritchie admitted that, considering the circumstances of this case, it became

---

[2]Included within the original *pro se* petition and two subsequent amendments are numerous claims of error, including but not limited to (1) prosecutorial misconduct; (2) being shackled before the jury; (3) trial counsel "handed" the State their case; (4) unconsitutional jury instructions, including range of punishment; (5) counsel's failure to move to exclude evidence at trial; (6) counsel's failure to adequately voir dire the jury; (7) counsel's failure to present evidence in defense of appellant; and (8) counsel's breach of attorney-client privilege.

evident "that there was not a defense based upon many of the defenses that become apparent in a homicide case." He particularly noted that the appellant was "obsessed" with his co-defendant and that the relationship had totally dominated the appellant's life. In early January, Ritchie was informed that other counsel, Robert Ogle, had been retained to represent the appellant.

Alan Feltes, a Sevier County attorney, testified that he was appointed to represent the appellant "about two months before the actual trial date." During a portion of this period, both Feltes and Ogle jointly represented the appellant. He related that he met at least twice a week with the appellant not including telephone conversations. Feltes testified that he discussed with the appellant the potential punishment that he faced if he was found guilty. Through his conversations with the appellant, Feltes learned that the appellant "didn't want to present an actual defense" because he did not want to "hurt" his co-defendant's case. Notwithstanding the appellant's position, Feltes was of the opinion that no defense could rationally be presented on behalf of the appellant, based upon the overwhelmingly incriminating evidence possessed by the State.

Feltes explained that, the morning after the verdict was returned, he was approached by co-defendant's counsel concerning the possibility of a plea arrangement. Co-defendant's counsel advised Feltes that Ms. Lovera was prepared to enter a plea of guilty, waiving her right to a direct appeal and post-conviction relief in exchange for a life sentence. Co-defendant's counsel added that the plea could not be accepted by the co-defendant unless "it was a package deal with [the appellant.]" Feltes conveyed this offer to the appellant. In doing so, Feltes informed the appellant that there was a good possibility that the appellant would receive a sentence of life without the possibility of parole. He also explained that the plea would guarantee the appellant a life sentence "which . . .at the time . . . was somewhere around twenty-five years." Counsel also believed that there was not

"any major error in the trial that would have . . . warranted any kind of reversal." The appellant agreed to accept the plea offer. Feltes did advise the appellant that "[he] didn't think [the appellant] could waive his post-conviction rights." Rather, he advised him to "go through the motions like we're going to do that as part of this deal." Mr. Feltes opined that "in the course of representing [the appellant] [he] never had any problem with him being coherent and understanding."

After considering the testimony presented at the evidentiary hearing and the transcript of the guilty plea hearing, the trial court entered its findings of fact and conclusions of law on the record:

> . . . I've already ruled that it was not double jeopardy. . . .
> . . . I asked Mr. Rae those statements about the . . . Plea Agreement . . . and he acknowledged making those and he said that's the way he felt that day. That testimony is very consistent with the testimony of Mr. Alan Feltes, that he was told not to do anything to hurt Mrs. Lovera. It was obvious throughout the trial of this case that was sort of the plan. . . . [H]e had to talk to her, they had to have some private time together before they accepted the plea agreement that was offered by the State.
>
> . . .There was no evidence in this record that Mr. Rae suffered from any mental disease or defect that would have kept him from understanding the nature of the charges against him, from being able to exercise his own free will.
>
> [T]he Court feels like that the evidence is totally and completely overwhelming that Mr. Rae knew what he was doing on the day that he entered the plea and accepted the sentencing agreement.
> . . .
>
> In order to set aside everything that's been done here the Court would have to find prejudice on your part. Well, if you instructed your attorney to put on no defense that would affect Mrs. Lovera and if the State had all of this evidence against you then I don't see any prejudice from anything that took place in this trial and certainly, and certainly the plea agreement and the sentencing agreement. I mean I don't know what more I could have done except tattooed it on your head. Certainly you had been advised and advised as to what you were doing and you sat right here this morning and said you knew that.
> . . .
>
> [F]rom the totality of the circumstances the Court is satisfied that the Petition for Post-Conviction Relief should be denied and is hereby so ordered.

**Analysis**

**I.  Waiver of Right to Post-Conviction Remedies**

Under the terms of the plea agreement, the appellant agreed to waive his right to both a direct appeal of his conviction and his right to pursue post-conviction remedies.  Obviously from the posture of this case, this waiver provision was not enforced against the defendant as he did seek post-conviction relief.  Thus, the initial inquiry before this court is whether this proceeding was properly entertained by the trial court and, subsequently, whether this cause is properly before this court.  After consideration of constitutional principles, we conclude that this case is properly before this court.

Although a criminal defendant may waive the right to a direct appeal as part of a plea agreement,[3] we conclude today that a defendant may not waive his or her right to post-conviction remedies as part of a plea agreement.  But see  State v. John Joseph Villaneuva, C.C.A. No. 93 (Tenn. Crim. App. at Knoxville, May 30, 1991), perm. to appeal denied, (Tenn. Jan. 6, 1992) (upholding waiver of right to raise ineffective assistance of counsel claim in post-conviction proceeding).  Post-conviction proceedings are significantly different from a direct appeal.  Unlike a direct appeal, a post-conviction proceeding provides a means of collaterally attacking the constitutional validity of a conviction.  See generally  Tenn. Code Ann. § 40-30-203 (1997).  And, although, generally, a guilty plea entered on the competent advice of counsel will be held to waive the majority of the fundamental

---

[3]Plea bargains are contractual in nature and therefore, the "negotiated plea represents a bargained for quid pro quo."  See  United States v. Escamilla, 975 F.2d 568, 571 (9th Cir. 1992).  Thus, a provision in the plea agreement waiving the defendant's right to pursue a direct appeal is a bargained for element of the agreement.  See United States v. Gonzalez, 981 F.2d 1037 (9th Cir. 1992).  This provision is enforceable as long as the waiver is knowing and voluntary.  See  State v. McKissack, 917 S.W.2d 714, 715 (Tenn. Crim. App. 1995) (footnote omitted).  See, e.g., United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); United States v. Bolinger, 940 F.2d 478, 480 (9th Cir. 1991).

protections afforded by the Constitution,[4] a guilty plea cannot waive jurisdictional defects.  Additionally, a guilty plea cannot waive those constitutional challenges to the resulting conviction if the plea itself was not knowingly and voluntarily entered upon competent advice of counsel.  If post-conviction remedies could be waived, a defendant would be precluded from challenging an involuntary guilty plea or one entered upon the ineffective assistance of counsel.  It would be unconscionable and against the public policy of this state to insulate a conviction from such challenges.  Notwithstanding, this court will not vacate a conviction due to an invalid waiver provision where the guilty plea is voluntary in all other aspects and the invalid provision did not prevent the appellant from seeking relief.  However, we do hold that the portion of the judgment in the case *sub judice* waiving the appellant's right to make application for post-conviction relief is void and unenforceable.  See, e.g., Majors v. State, 568 N.E.2d 1065, 1067-1068 (Ind. Ct. Ap. 1991); Hood v. State, 890 P.2d 797, 798 (Nev. 1995).  Cf.  United States v. Astacio, 14 F. Supp.2d 816, 818-819 (E.D. Va. 1998) (holding, even where a defendant has waived his statutory right to bring a § 2255 motion, he may nonetheless raise claims of ineffective assistance of counsel and the voluntariness of the guilty plea) (citing United States v. Wilkes, 20 F.3d 651, 652- 653 (5th Cir. 1994); United States v. Pruitt, 32 F.3d 431, 432-433 (9th Cir. 1994); United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. ), cert. denied, 508 U.S. 979, 113 S.Ct. 2980 (1993)).

## II. Effect of Guilty Plea

Preliminary to our review of the voluntariness of the guilty plea, we first address the appellant's argument that his conviction violates the protections against double jeopardy because he entered a guilty plea after the jury found him guilty of the same offense.  The Fifth Amendment to the United States Constitution and

---

[4]A guilty plea made voluntarily, understandingly, and knowingly effectively constitutes a waiver of the constitutional rights against compulsory self-incrimination, the right to confront one's accusers, and the right to trial by jury, and, except under limited exceptions, the right to direct appeal. See generally Tenn. R. Crim. P. 11(c); 37(b)(2).

Article 1, Section 10 of the Tennessee Constitution protect one accused of a crime (1) against a second prosecution after an acquittal; (2) against a second prosecution after conviction; and (3) against multiple punishments for the same offense. State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996). Double jeopardy becomes a factor only when the defendant faces retrial or multiple punishments for the same crime. Accordingly, the appellant's argument based on the constitutional protection against double jeopardy is without merit.

There are no limitations under the Tennessee Constitution, Criminal Code, Tennessee Rules of Criminal Procedure or Rules of Court which would *per se* prohibit the entry of a guilty plea after a jury verdict had been returned.[5] A guilty plea is in itself a conviction and is conclusive as to the defendant's guilt. Thus, in the circumstance before this court, we construe the appellant's subsequent entry of a guilty plea to effectively set aside the jury verdict of first degree premeditated murder. Cf. Haskins v. Commonwealth, 500 S.W.2d 407, 4308, 409 (Ky. App. 1973). But see Dave v. Commonwealth, 467 S.E.2d 287, 289 (Va. Ct. App. 1996) (entry of guilty plea after jury verdict is moot). The effect of the guilty plea is to nullify, for all practical purposes, the guilt phase of the proceeding. Thus, when examining the appellant's conviction for constitutional infirmities, the reviewing court

places him in the same posture as if he had not proceeded to trial but only entered a guilty plea.

### III. Post-Conviction Claims

Based upon our ruling that the appellant's conviction for first degree murder

---

[5]The provision in Rule 11 requiring notice to the court of the existences of a plea agreement prior to trial is not a bar to entering a guilty plea after the verdict but rather, "subsection (e)(5) . . . permits the trial judge to impose reasonable pretrial time limits on the court's consideration of plea agreements, a practice which will allow maximum efficiency in the docketing of cases proceeding to trial on pleas of not guilty." See Advisory Commission Comments, Tenn. R. Crim. P. 11.

stems from his plea of guilty to that offense rather than from a jury verdict, our review is limited to the voluntary nature of the plea and the ineffective assistance of counsel regarding the plea. In his petition, the appellant alleges that his guilty plea was involuntarily and unknowingly entered, that trial counsel was ineffective in negotiating a plea arrangement that foreclosed a direct appeal and post-conviction review, that counsel failed to consult with the appellant at critical stages of the proceedings, that counsel failed to raise the issue of appellant's competency, that counsel failed to properly conduct a pre-trial investigation and that counsel was deficient in his performance at trial and in preparation for the sentencing hearing.

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. See North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164 (1970).

In Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366 (1985), the United States Supreme Court addressed the issue of alleged involuntary guilty pleas resulting from erroneous or negligent advice by trial counsel. The result reached was the formulation of a merger of the Strickland test for ineffective assistance and the traditional requirements for a valid guilty plea. The Strickland test provides that, to prevail on a claim of ineffective counsel, the defendant must establish that (1) the services rendered by counsel were deficient and (2) he/she was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993). As applied to guilty pleas, the first prong, deficient performance remains the same, *i.e.*, counsel failed to exercise the customary skill and diligence that reasonably competent counsel would provide under similar circumstances. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Walton v. State, 966 S.W.2d 54, 54-55 (Tenn.

10

Crim. App. 1997). However, the prejudice requirement focuses on whether counsel's ineffective performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. at 58, 106 S.Ct. at 370. In other words, in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Id.; See also Walton, 966 S.W.2d at 55.

Generally, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial. Hill v. Lockhart, 474 U.S. at 59, 106 S.Ct. at 370. Indeed, the focus is not only upon the actual "error" committed by counsel, but whether had counsel acted competently (1) would counsel have changed his recommendation as to the plea or (2) would the competent performance have been likely to change the outcome of a trial. See Hill v. Lockhart, 474 U.S. at 59, 106 S.Ct. at 370-371.

In the present case, the post-conviction court concluded that the appellant received the competent assistance of counsel and, consequently, entered his plea knowingly and voluntarily. A trial court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997); Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978), cert. denied, 441 U.S. 947, 99 S.Ct. 2170 (1979).[6] The transcript of the guilty plea hearing reveals that the trial court thoroughly advised the appellant regarding his right to appeal. The court further explained to the appellant that by entering a plea of guilty he was effectively

---

[6]Notwithstanding this general rule, in State v. Brenda Anne Burns, No. W1996-00004-SC-R11-CD (Tenn. at Jackson, Nov. 8, 1999) (for publication), our supreme court held that "[c]ases that involve mixed questions of law and fact are subject to de novo review." (citing Harries v. State, 958 S.W.2d 799, 802 (Tenn. Crim. App. 1997)). Specifically, the supreme court determined that issues involving alleged deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact. See State v. Brenda Anne Burns, No. W1996-00004-SC-R11-CD. Although we perform a de novo review of the issue, the appellant must still establish his or her allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997).

waiving a myriad of constitutional rights. When questioned by the court regarding the performance of his trial counsel at the guilty plea hearing, the appellant responded:

> I would just like to say that Mr. Feltes and all of my previous attorneys did the best they could do. There's no doubt that I'm guilty. I didn't deny I was guilty. The day after it happened I went and confided in my friends. I lied to the law enforcement officials that came and questioned me that day. I ran to Mexico because I was guilty and I came back to the United States to face the punishment. I sat there, I shut up and I did not offer a defense. There is not a defense for a man who is guilty. That's all I have to say, sir.

Finally, the court informed the appellant that by entering a guilty plea in exchange for a sentence of life imprisonment "means that [he] will have to serve at least twenty-five years of [his] sentence before [he] is eligible for parole." The court, then, after more than thoroughly advising the appellant of his rights, accepted the appellant's plea of guilty to the offense of first degree murder.

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court held, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. at 31, 91 S.Ct. at 164. In making this determination, the reviewing court must look to the totality of the circumstances. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995), perm. to appeal denied, (Tenn. 1996). See also Chamberlain v. State, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990), perm. to appeal denied, (Tenn. 1991). Indeed, a "court charged with determining whether . . . pleas were 'voluntary' and 'intelligent' must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial."

12

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

With these criteria considered, we conclude that the record amply supports the trial court's finding that counsel informed the appellant of his right to appeal in addition to providing other relevant sentencing information at the time of entry of his plea. Moreover, our review of the entire record establishes that the appellant's plea of guilty was entered voluntarily and knowingly and with full awareness of his constitutional rights.

For the foregoing reasons, we deny post-conviction relief and affirm the judgment of the Criminal Court of Sevier County.

_____
DAVID G. HAYES, Judge


CONCUR:


_____
ALAN E. GLENN, Judge


_____
JOE H. WALKER, III, Special Judge